<u>UNITED STATES DISTRICT COURT</u>
<u>WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION</u>

KAYLYN BROCK and

KENDRA DEYARMOND

       Plaintiffs,

Case No.

Hon.

Plaintiff's Complaint and Jury
Demand

v.

MICHIGAN STATE UNIVERSITY,
MICHIGAN STATE UNIVERSITY
BOARD OF TRUSTEES, official capacity
only, DAVID KAUFFMAN,
Chairperson, Department of
Neurology & Ophthalmology, in his individual
and official capacity, JANE WARD, MSU
Neurology Resident Director, in her individual
and official capacity, RAQUEL MCCRIMMON,
Clinical Coordinator Supervisor, in her individual
and official capacity, EDWARD W. SPARROW
HOSPITAL ASSOCIATION, a domestic nonprofit
Corporation d/b/a SMG LANSING INTERNAL
MEDICINE and EDWARD W. SPARROW
HOSPITAL ASSOCIATION, a domestic nonprofit
Corporation,

       Defendants.

---

**MANVIR S. GREWAL (P48082)**
**NOLAN ERICKSON (P72661)**
**KELLY MCCLINTOCK (P83198)**
**GREWAL LAW, PLLC**
Attorneys for Plaintiffs
2290 Science Parkway
Okemos, MI 48864
Ph: (517) 393-3000
F:  (517) 393-3003
E:nerickson@4grewal.com
kmcclintock@4grewal.com

1

## <u>TABLE OF CONTENTS</u>

I.      JURISDICTION AND VENUE

II.     STATEMENT OF RELEVANT FACTS AND INDIVIDUALS

III.    COUNT ONE  - VIOLATION OF TITLE IX – 20 U.S.C. 1681(A), *et seq* AS TO
        MSU AND MSU TRUSTEES

IV.     COUNT TWO –DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF
        TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

V.      COUNT THREE – EMPLOYMENT DISCRIMINATION ON THE BASIS OF
        MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 ET SEQ.

VI.     COUNT FOUR – NEGLIGENT HIRING AND RETENTION IN VIOLATION OF
        CIVIL RIGHTS 42 U.S.C. § 1983  AS TO DEFENDANTS STRAMPEL, WARD
        AND POTENTIALLY UNKNOWN OTHERS ASSOCIATED

VII.    COUNT FIVE – NEGLIGENT SUPERVISION IN VIOLATION OF CIVIL
        RIGHTS 42 U.S.C. § 1983  AS TO DEFENDANTS STRAMPEL, WARD AND
        KAUFFMAN AND POTENTIALLY UNKNOWN OTHERS ASSOCIATED

VIII.   COUNT SIX – NEGLIGENCE AGAINST DEFENDANT MCCRIMMON

IX.     COUNT SEVEN – NEGLIGENCE AS TO DEFENDANTS STRAMPEL,
        KAUFFMAN, AND WARD

X.      COUNT EIGHT – GROSS NEGLIGENCE AS TO DEFENDANT MSU

XI.     COUNT NINE – NEGLIGENT SUPERVISION AS TO DEFENDANTS EDWARD
        W. SPARROW HOSPITAL ASSOCATION, d/b/a SMG LANSING INTERNAL
        MEDICINE, and EDWARD W. SPARROW HOSPITAL ASSOCIATION

XII.    DAMAGES

<u>**PLAINTIFFS' COMPLAINT AND JURY DEMAND**</u>

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

**NOW COMES** Plaintiffs, by and through their attorneys, GREWAL LAW, PLLC, and for their Complaint and Jury Demand allege and state as follows:

## I. <u>JURISDICTION AND VENUE</u>

1. Plaintiffs bring their action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*, Title VII and 42 U.S.C. 1983.

2. The Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.

3. The Court has jurisdiction pursuant to 28 U.S.C. § 1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government.

4. The Court has jurisdiction pursuant to 28 U.S.C. § 1367, which gives the district court supplemental jurisdiction over state law claims.

5. Plaintiffs were sexually assaulted at MSU's Neurology Clinic in Ingham County, Michigan, which sits in the Southern District Division of the Western District of Michigan.

6. Venue is appropriate in this judicial district court under 28 U.S.C. § 1391(b) because the events that give rise to this Complaint occurred in this District.

## II. <u>STATEMENT OF RELEVANT FACTS AND INDIVIDUALS</u>

7.  This is a civil action for injuries sustained by Plaintiffs as a result of acts, conduct, omissions, and deliberate indifference by Defendant Michigan State University ("MSU"), Edward W. Sparrow Hospital Association d/b/a SMG Lansing Internal Medicine, Edward W. Sparrow Hospital Association, and their respective employees, representatives, and agents, relating to sexual harassment, assault, abuse, molestation, and nonconsensual sexual touching and harassment by Sparrow Hospital employee and MSU resident/employee, Michael Phinn ("Phinn"), against Plaintiffs.

8.  Plaintiff Brock is a current employee of MSU and was an employee of MSU's Neurology Clinic at all relevant times as a Medical Assistant (M.A.).

9.  Plaintiff Deyarmond is and was an employee of MSU's Neurology Clinic at all relevant times as a Medical Assistant (M.A.).

10. Michael Phinn was an MSU graduate conducting his post-graduation residency at MSU's Neurology Clinic under the supervision of MSU's College of Osteopathic Medicine and Edward W. Sparrow Hospital Association, d/b/a SMG Lansing Internal Medicine, and Edward W. Sparrow Hospital Association at the time of the assault.

11. Upon information and belief, Phinn was at all relevant times an employee, representative and/or agent of MSU.

12. Defendant William Strampel ("Strampel") was the Dean of MSU's College of Osteopathic Medicine up until December 2017.

13. Defendant David Kauffman ("Kauffman") is a professor and chair of MSU's department of neurology.

14. Defendant Jayne Ward ("Ward") is the Neurology Residency Director and Associate Chair of Neurology at MSU.

15.    Defendant Raquel McCrimmon ("McCrimmon") works as the Neurology Clinical coordinator and supervises all M.A.s within the clinic.

16.    Defendants Edward W. Sparrow Hospital Association, d/b/a SMG Lansing Internal Medicine, and Edward W. Sparrow Hospital Association employed Phinn at the time of the assaults against Plaintiffs.

17.    In or around, June, 2017 Plaintiff Brock was assigned to work with Phinn as his Medical Assistant (M.A).

18.    Between June 2017 and September 2018 Phinn sexually harassed, assaulted, abused and molested Plaintiff Brock on MSU's property at the Neurology Clinic located at 804 Service Rd., Suite A217, in East Lansing, MI 48824.

19.    Beginning in June, 2017 and continuing until September, 2019, Defendant Phinn would routinely touch Plaintiff Brock in inappropriate ways such as running his hand down her leg and back, touching her inner thighs, touching in between her legs, touching her genitalia outside of her pants, reaching into her pants and touching her genitalia, digitally penetrating her, and groping her breasts both inside and outside of her shirt and bra.

20.    In or around June 2018 until September 2018, Phinn sexually harassed, assaulted, abused, and molested Plaintiff Deyarmond on MSU's property at the Neurology Clinic located at 804 Service Rd., Suite A217, in East Lansing, MI 48824.

21.    Beginning in June, 2018 and continuing until September, 2018, Phinn made inappropriate comments to Plaintiff Deyarmond and would routinely touch her in inappropriate ways including, but not limited to, groping her breasts inside and outside of her shirt and bra, attempting to put his hands down her pants, rubbing his penis against her arm, firmly grabbing her to prevent her from leaving, forcefully turning her neck and shoulders to make

5

her look at inappropriate photographs and videos of himself, expose himself to her and masturbate in front of her.

22.    Phinn would also expose himself to Plaintiff Brock and Plaintiff Deyarmond when he touched her.

23.    Phinn would often times masturbate himself as he touched Plaintiff Brock and Plaintiff Deyarmond.

24.    At times between June, 2017 and September, 2019, Phinn would send and/or show Plaintiff Brock unwanted photographs of him naked and videos of him masturbating.

25.    Upon information and belief, Phinn sent these photographs and videos via work monitored emails and messaging systems AthenaNet.

26.    Phinn would show these photographs and videos to Plaintiff Brock while at work, during work hours, in the Neurology Clinic during the course of her and Phinn's employment.

27.    Phinn would also corner Plaintiff Deyarmond at her desk to show her unwanted and inappropriate photographs and videos of himself naked and masturbating.

28.    All sexual harassment, abuse and assaults of Plaintiffs happened during work hours, when Plaintiffs were employees of MSU, working as M.A.s in MSU's Neurology Clinic.

29.    All sexual harassment, abuse and assaults of both Plaintiff's happened when Phinn was an employee, representative and/or agent of MSU and Edward W. Sparrow Hospital Association, d/b/a SMG Lansing Internal Medicine, and Edward W. Sparrow Hospital Association, working as a resident doctor.

30.    In or around December 2017, Plaintiff Brock informed Defendant Raquel McCrimmon, about Phinn's unwelcomed, nonconsensual and inappropriate conduct specifically, but not limited to, Phinn previously had kissed her, touched her, asked her to play truth or date,

and Phinn sat on Plaintiff's desk at MSU's Neurology Clinic and showed her showed pictures of his genitalia.

31. Defendant McCrimmon was, and still is, an employee, representative, and/or agent of MSU in a supervisory position.

32. As a supervisor, Defendant McCrimmon is mandated per MSU policy on reporting sexual harassment to report Defendant Phinn's conduct, at the very least, to the Office of Institutional Equity (OIE)[1].

33. Defendant McCrimmon failed to report Phinn's conduct to higher ups in the MSU Neurology Clinic and did not make a report to the Office of Institutional Equity as mandated in MSU's policy.

34. After Defendant McCrimmon was notified of Phinn's inappropriate behavior toward Plaintiff Brock in or around December 2017, Plaintiff Brock continued to be harassed and assaulted by Phinn until September 2018.

35. After Defendant McCrimmon was notified of Phinn's inappropriate behavior toward Plaintiff Brock in or around December 2017, Plaintiff Deyarmond was subjected to harassment and sexual assault by Phinn in 2018.

36. Upon information and belief, MSU and its employees, agents and/or representatives knew of Phinn's propensity for inappropriate sexual behavior toward women and knew that Phinn was previously found in violation of sexually harassing and assaulting a fellow medical student.

37. MSU and its employees, representatives, and/or agents negligently hired, retained and supervised Phinn given the known risk he posed to women he was in close contact with.

---

[1] See University Policy on Relationship Violence and Sexual Misconduct P. 19 Section XI. Violations: Complaint Procedures subsection E.3 Reports to Mandatory Reporters

38. MSU had no policy or procedures in place to prevent Phinn from sexually harassing or assaulting Plaintiffs even though MSU knew of Phinn's prior sexually abusive behavior.

39. MSU knew or should have known of Phinn's sexual harassment and abuse toward Plaintiff Brock but failed to take any appropriate corrective action in violation of Title VII.

40. MSU further tolerated and authorized and/or permitted a custom, policy, practice and/or procedure of insufficient hiring, retention and supervision, which allowed Phinn to perpetrate abuse within the Neurology Clinic in violation of Plaintiff's constitutional rights.

41. MSU and its agents had actual knowledge of but were recklessly and deliberately indifferent to Phinn's sexual discrimination, sexual harassment and sexual misconduct against Plaintiffs.

42. MSU was deliberately indifferent to the abuse occurring in the Neurology Clinic and took no action to investigate Plaintiff Brock's complaints, which caused Plaintiff Brock to suffer further sexual assaults, and further caused Plaintiff Deyarmond's sexual harassment and assault by Phinn through nonconsensual touching of their bodies.

43. MSU's deliberate indifference before, during, and after the sexual assault, abuse and molestation of Plaintiff's was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*, was in violation of Title VII of The Civil Rights 0f 1964, 42 U.S.C. § 2000e-2(a)(1) and (a)(2), and further a deprived Plaintiffs of their constitutional right to bodily integrity, 42 U.S.C § 1983.

44. Edward W. Sparrow Hospital Association, d/b/a SMG Lansing Internal Medicine, and Edward W. Sparrow Hospital Association tolerated and authorized and/or permitted a custom, policy, practice and/or procedure of insufficient hiring, retention and supervision,

which allowed Phinn to perpetrate abuse within the Neurology Clinic in violation of Plaintiffs' constitutional rights.

45. In September, 2018, Phinn was arrested and charged with 14 felony counts of criminal sexual conduct (CSC) and 12 counts relating to unauthorized/illegal use of a computer to commit a crime.

46. On July 30, 2019, Phinn pled guilty to two counts of CSC second degree (Ingham County Circuit case No.: 19-000056-FC), one count of unauthorized access to a computer and one count of using a computer to commit a crime (Ingham County Circuit case no.: 19-000159-FH).

47. On September 18, 2019, Phinn was sentenced to five to fifteen years in prison.

48. Phinn's convictions relate directly to incidents that took place at MSU's Neurology Department and Sparrow Hospital.

### III.   COUNT ONE - VIOLATION OF TITLE IX – 20 U.S.C. 1681(A), *et seq* AS TO MSU AND MSU TRUSTEES

49. Plaintiffs reallege and incorporate by reference the allegations contained above.

50. Title IX's statutory language states, "No person in the United States shall on the basis of sex, be … subject to discrimination under an education program or activity receiving Federal financial assistance…" (20 U.S.C. § 1681(a)).

51. Plaintiffs are "persons" under the Title IX statutory language.

52. Defendant, MSU, receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681(a) *et seq.*

53.    MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment, including, specifically, allegations that sexual abuse, sexual assault, or sexual harassment has been committed by an employee.[2]

54.    The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school and extends to sexual harassment, sexual abuse and sexual assault by employees.

55.    Employment discrimination comes within Title IX protections.[3]

56.    Phinn's actions and conduct were carried out under one of Defendant MSU's education programs or activities, which provides medical treatment to students and the general public where Phinn worked as a resident doctor and was therefore an employee of MSU.

57.    Plaintiffs worked as employees of MSU; employed as M.A.s working underneath Phinn.

58.    Plaintiffs therefore are included within Title IX rules and polices as part of the University Community.

59.    Phinn's conduct and actions toward Plaintiff Brock, including but not limited to, Phinn showing Plaintiff photographs of his penis, showing Plaintiff videos of himself masturbating, exposing his penis to Plaintiff while in the Department of Neurology, masturbating in front of her in the Department of Neurology, including at Plaintiff's desk and inside an exam room, nonconsensual groping of Plaintiff's breasts on top of and underneath her bra, putting his hands down Plaintiff's back, in between her legs, down her thigh and inside her scrubs touching her genitalia over her underwear and digitally penetrating her, constitutes sex discrimination under Title IX.

---

[2] U.S. Dept. of Ed., Office of Civil Rights, Questions and Answers on Title IX and sexual violence, Apr. 29, 2014, at 1, 3, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf
[3] North Haven Bd. of Ed. V. Bell (1982) 456 U.S. 512, 520-535.

60.     Phinn's conduct and actions toward Plaintiff Deyarmond, including but not limited to, making inappropriate comments to Plaintiff Deyarmond and routinely touching her in inappropriate ways including, but not limited to, groping her breasts inside and outside of her shirt and bra, attempting to put his hands down her pants, rubbing his penis against her arm, firmly grabbing her to prevent her from leaving, forcefully turning her neck and shoulders to make her look at inappropriate photographs and videos of himself, exposing himself to her and masturbate in front of her, constitutes sex discrimination under Title IX.

61.     McCrimmon was the "clinical coordinator" in the MSU Neurology Clinic.

62.     In her job position, she was supervisor of all M.A.s within the Neurology Clinic, including Plaintiffs, and was involved in moving people around to make things run smoothly.

63.     Ms. McCrimmon held a supervisory role in MSU's neurology clinic, which meant she had the authority, autonomy and mandate to raise complaints regarding sexual harassment and abuse committed by a fellow MSU employee to higher ups at MSU and at the very least to OIE and also had the authority to move staff around.

64.     As early as December 2017, Defendant McCrimmon had actual knowledge of Phinn's sexual harassment of Plaintiff Brock, which should have prompted a response and action on McCrimmon's part.

65.     In or around December 2017, Plaintiff Brock, at the very least, told McCrimmon that Phinn put his phone on her desk at work and scrolled passed several pictures of his penis, Phinn touched Plaintiff Brock, and Phinn kissed Plaintiff Brock.

66. Per MSU internal policy on mandated reporters, McCrimmon, as a supervisory employee, having knowledge of this harassment was mandated to report the conduct, at the very least, to the Office of Institutional Equity. See chart below.

| STATUS OF PERSON VICTIMIZED | STATUS OF MANDATORY REPORTER | WHERE TO FILE REPORT |
|---|---|---|
| REPORTING: SEXUAL MISCONDUCT AND RELATIONSHIP VIOLENCE (INCLUDING: SEXUAL VIOLENCE, SEXUAL EXPLOITATION, AND STALKING) | | |
| • Student[13] <br> • Employee <br> • Third Party | Undergraduate Student Employees | Undergraduate Student's Supervisor. Supervisor will report to Office of Institutional Equity **AND** MSU Police. |
| | All Other Employees | Office of Institutional Equity (OIE) **AND** MSU Police |
| REPORTING: SEXUAL HARASSMENT | | |
| • Employee <br> • Third Party | Undergraduate Student Employees | Undergraduate Student's Supervisor. Supervisor will report to Office of Institutional Equity. |
| | Supervisory Employees | Supervisors must report to OIE. |
| | Non-supervisory Employees | Although non-supervisory employees are not required to report, they are encouraged to report sexual harassment to OIE. |
| Student | Undergraduate Student Employees | Undergraduate Student's Supervisor. Supervisor will report to Office of Institutional Equity. |
| | All Employees | Must report to OIE |

67. McCrimmon's action or inaction was clearly unreasonable in light of known circumstances, which is that Phinn had harassed and assaulted Plaintiff Brock.

68. McCrimmon's action or inaction is further unreasonable in light of the mandated reporting policy within MSU that required McCrimmon report known sexual harassment and established a deliberate indifference to known sexual harassment and assault.

69. MSU's deliberate indifference to known sexual harassment and assault within the Neurology Clinic resulted in Plaintiff Brock being further sexually harassed and assaulted throughout 2018 even after the University had notice.

70. MSU's deliberate indifference to known sexual harassment and assault within the Neurology Clinic resulted in Plaintiff Deyarmond being sexual harassed and assaulted in 2018 even after the University had notice of what happened to Plaintiff Brock.

12

71.  Plaintiffs had difficulty concentrating at work, anxiety about returning to work as well as suffered from emotional injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and  psychological injuries, which affected her ability to work within the Neurology Clinic at MSU.

72.  McCrimmon's insufficient action, that being her failure to report Phinn's inappropriate and nonconsensual conduct to anyone within the Neurology Clinic or OIE, allowed Phinn unfettered and unsupervised access to Plaintiffs and thus made Plaintiffs vulnerable to and subjected her to further harassment and assault throughout 2019.

73.  McCrimmon was an "appropriate person" with actual knowledge based on her role as a supervisory employee who was mandated to report known sexual harassment and assault.

74.  Reporting Phinn's conduct to OIE gave McCrimmon the authority to address the alleged conduct.

75.  McCrimmon also had the ability to control those within MSU's neurology Clinic as the Clinical Coordinator and supervisor of all M.A.s within the Neurology Clinic and had the ability to institute corrective measures to ensure Plaintiffs and others would not endure sexual harassment or assaults by Phinn.

76.  Defendants MSU, MSU Board of Trustees, David Kauffman, Jane Ward, and Raquel McCrimmon, with actual knowledge of previous Title IX complaints against Phinn, acted with deliberate indifference in deviating significantly from the standard of care outlined by MSU's own Title IX policies and procedures.

77.     Defendants MSU, MSU Board of Trustees, David Kauffman, Jane Ward, and Raquel McCrimmon's failure to promptly and appropriately investigate, respond to, and remedy the sexual assaults after receiving notice subjected Plaintiffs to further harassment and a sexually hostile environment, effectively denying their access to Title IX protections.

### IV.   COUNT TWO – EMPLOYMENT DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964; 42 U.S.C. § 2000e-2(a)(1) and (a)(2)

78.     Plaintiffs reallege and incorporate by reference the allegations contained above

79.     Title VII prohibits "discriminat [ion]  ... because of ... sex" in the "terms" or "conditions" of employment.

80.     Sex discrimination in terms of employment includes sexual harassment of any kind that meets statutory requirement.

81.     Plaintiffs and Phinn were employed by MSU working in the Neurology Clinic.

82.     The sexual harassment and assaults all took place within the Neurology Clinic during work hours.

83.     Plaintiffs were sexually harassed and assaulted within the terms or conditions of her employment by Phinn at MSU's Neurology Clinic.

84.     Phinn's conduct toward Plaintiffs was nonconsensual and unwelcome.

85.     Phinn's conduct toward Plaintiffs was motivated by the fact that they are female, therefore making them a protected class.

86.     The harassment of Plaintiffs created an abusive work environment making it difficult for them to concentrate at work and resulted in them being anxious and fearful of going to work.

87.     Phinn's conduct toward Plaintiffs was not a mere offensive statement but was humiliating and threatening and was so severe and pervasive that it interfered with the Plaintiffs' abilities to do their jobs.

88.     The conduct toward Plaintiff Brock included, but was not limited to, Phinn showing Plaintiff photographs of his penis, showing Plaintiff videos of himself masturbating, exposing his penis to Plaintiff while in the Department of Neurology, masturbating in front of her in the Department of Neurology, including at Plaintiff's desk and inside an exam room, nonconsensual groping of Plaintiff's breasts on top of and underneath her bra, putting his hands down Plaintiff's back, in between her legs, down her thigh and inside her scrubs touching her genitalia over her underwear and digitally penetrating her, constitutes sex discrimination under Title IX.

89.     The conduct toward Plaintiff Deyarmond included, but was not limited to, making inappropriate comments to Plaintiff Deyarmond and routinely touching her in inappropriate ways including, but not limited to, groping her breasts inside and outside of her shirt and bra, attempting to put his hands down her pants, rubbing his penis against her arm, firmly grabbing her to prevent her from leaving, forcefully turning her neck and shoulders to make her look at inappropriate photographs and videos of himself, exposing himself to her and masturbate in front of her, constitutes sex discrimination under Title IX.

90.     A reasonable person in Plaintiff's situation would objectively view a work environment where intimate parts of their bodies are routinely touched against their will as abusive.

91.     Upon information and belief, MSU's knew or should have known of Phinn's conduct based on his prior sexual harassment and assault of a fellow medical student while enrolled as an MSU medical student.

92.    MSU further knew or should had known of Phinn's offensive conduct based on McCrimmon's knowledge of offensive and unwelcomed behavior toward Plaintiff Brock in December 2017 including that Phinn showed her pictures of his penis, had touched her, and had kissed her.

93.    McCrimmon was Plaintiff's supervisor and therefore a person designated to receive complaints regarding sexual harassment and assault within the MSU Neurology Clinic.

94.    McCrimmon was also mandated per MSU policy, to report sexual harassment and assault, at the very least, to MSU's OIE office and therefore was a person reasonably expected to refer Plaintiff's complaint up the ladder.

95.    MSU knew or should have known of Phinn's offensive conduct but failed to take any appropriate corrective action making them liable under Title VII.

96.    As the direct and proximate result of Defendants' actions and/or inactions, Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and psychological injuries.

## V.    COUNT THREE – EMPLOYMENT DISCRIMINATION ON THE BASIS OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 ET SEQ.

97.    Plaintiffs reallege and incorporate by reference the allegations contained above.

98.    Plaintiffs and Phinn were employed by MSU working in the Neurology Clinic at all material times, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. and, thus, Plaintiffs belonged to a protected group.

99.     The sexual harassment and assaults all took place within the Neurology Clinic during work hours.

100.    Plaintiffs were sexually harassed and assaulted within the terms or conditions of her employment by Phinn at MSU's Neurology Clinic.

101.    Phinn's conduct toward Plaintiffs was nonconsensual and unwelcome.

102.    Phinn's conduct toward Plaintiffs was motivated by the fact that they are female, therefore making them a protected class.

103.    The harassment of Plaintiffs created an abusive work environment making it difficult for them to concentrate at work and resulted in them being anxious and fearful of going to work.

104.    Phinn's conduct toward Plaintiffs was not a mere offensive statement but was humiliating and threatening and was so severe and pervasive that it interfered with the Plaintiffs' abilities to do their jobs.

105.    The conduct toward Plaintiff Brock included, but was not limited to, Phinn showing Plaintiff photographs of his penis, showing Plaintiff videos of himself  masturbating, exposing his penis to Plaintiff while in the Department of Neurology, masturbating in front of her in the Department of Neurology, including at Plaintiff's desk and inside an exam room, nonconsensual groping of Plaintiff's breasts on top of and underneath her bra, putting his hands down Plaintiff's back, in between her legs, down her thigh and inside her scrubs touching her genitalia over her underwear and digitally penetrating her, constitutes sex discrimination under Title IX.

106.    The conduct toward Plaintiff Deyarmond included, but was not limited to, making inappropriate comments to Plaintiff Deyarmond and routinely touching her in

inappropriate ways including, but not limited to, groping her breasts inside and outside of her shirt and bra, attempting to put his hands down her pants, rubbing his penis against her arm, firmly grabbing her to prevent her from leaving, forcefully turning her neck and shoulders to make her look at inappropriate photographs and videos of himself, exposing himself to her and masturbate in front of her, constitutes sex discrimination under Title IX.

107.    The conduct of Michael Phinn in sexually harassing Plaintiff constitutes sexual discrimination in violation of MCL 37.2101 *et seq*.

108.    A reasonable person in Plaintiff's situation would objectively view a work environment where intimate parts of their bodies are routinely touched against their will as abusive.

109.    The unwelcome sexual conduct was intended to and did substantially interfere with Plaintiffs' employment in that it created an intimidating, hostile, and offensive work environment.

110.    Upon information and belief, MSU's knew or should have known of Phinn's conduct based on his prior sexual harassment and assault of a fellow medical student while enrolled as an MSU medical student.

111.    MSU further knew or should had known of Phinn's offensive conduct based on McCrimmon's knowledge of offensive and unwelcomed behavior toward Plaintiff Brock in December 2017 including that Phinn showed her pictures of his penis, had touched her, and had kissed her.

112.    McCrimmon was Plaintiff's supervisor and therefore a person designated to receive complaints regarding sexual harassment and assault within the MSU Neurology Clinic.

113.    McCrimmon was also mandated per MSU policy, to report sexual harassment and assault, at the very least, to MSU's OIE office and therefore was a person reasonably

expected to refer Plaintiff's complaint up the ladder. MSU knew or should have known of

Phinn's offensive conduct but failed to take any appropriate corrective action making

them liable under MCL 37.2101 *et seq.*

114.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiffs have

suffered injuries including, but not limited to, pain and suffering, severe emotional distress,

potential loss of earnings and earning capacity, loss of reputation and esteem in the

community including embarrassment, loss of self-esteem, disgrace, fright, grief,

humiliation, and loss of enjoyment of life, physical manifestations of emotional distress

and  psychological injuries.

### VI.    COUNT FOUR – NEGLIGENT HIRING AND RETENTION IN VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983  AS TO DEFENDANTS STRAMPEL, WARD AND POTENTIALLY UNKNOWN OTHERS ASSOCIATED

115.    Plaintiffs reallege and incorporate by reference the allegations contained above.

116.    The Fourteenth Amendment of the United States Constitution provides Plaintiffs a

constitutionally protected substantive due process right to bodily integrity, which includes

the constitutional right to be free from bodily invasion through sexual assault, abuse, or

molestation.

117.    At all relevant times, Defendants Strampel and Ward were acting under color of law, to

wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the

State of Michigan and/or MSU.

118.    The acts as alleged above amount to a violation of these clearly established constitutionally

protected rights to bodily integrity, including the right to be free from sexual assault, of

which reasonable persons in their positions should have known.

119.   Defendants Strampel, Ward and potential unknown others associated with MSU, had a duty to MSU employees when hiring resident doctors, such as Phinn, to work at the MSU Neurology Clinic.

120.   Defendants Strampel, Ward and potential unknown others associated with MSU breached that duty.

121.   Defendants Strampel, Ward and potential unknown others associated with MSU knew or should have known of Phinn's propensities for inappropriate and nonconsensual sexual behavior toward women as demonstrated by the 2013 MSU I3 investigation and finding.

122.   Defendants Strampel, Ward and potential unknown others associated with MSU's breached that duty because they knew about Phinn's propensity for inappropriate and nonconsensual sexual behavior toward women and hired him without putting any protocols in place to properly supervise him or otherwise protect Plaintiffs from his harassment and abuse.

123.   In the alternative, defendants Strampel, Ward and potential unknown others associated with MSU breached that duty when they failed to properly investigate Phinn's background and learn about the violation that occurred on MSU property, while Phinn was an MSU medical student and, upon information and belief, is contained in Phinn's file with the University.

124.   Defendants Strampel and Ward's breach of their duty resulted in a violation of Plaintiffs' right to bodily integrity as secured by the Michigan and United States Constitution.

125.   Defendants Strampel, Ward and potential unknown others associated with MSU are also liable to Plaintiffs under 42 U.S.C. § 1983 for maintaining customs, policies and practices which deprived Plaintiffs of their constitutional rights.

126.   Defendants Strampel, Ward and potential unknown others associated with MSU tolerated and authorized and/or permitted a custom, policy, practice and/or procedure of insufficient hiring or screening of individuals who would be placed in the Neurology Clinic, which allowed Phinn to perpetrate abuse against Plaintiffs and ultimately resulted in a violation of their constitutional right to bodily integrity under 42 U.S.C. 1983.

127.   As a direct and proximate result of Defendants Strampel and Ward's actions and/or inactions, Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and psychological injuries.

128.   In the alternative, the action or inaction of Defendants Strampel and Ward's was deliberately indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constituted gross negligence that is the proximate cause of Plaintiffs' damages.  Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and psychological injuries.

VII.   **COUNT FIVE – NEGLIGENT SUPERVISION IN VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983  AS TO DEFENDANTS STRAMPEL, WARD AND KAUFFMAN AND POTENTIALLY UNKNOWN OTHERS ASSOCIATED**

129.   Plaintiff reallege and incorporate by reference the allegations contained above.

130.   The Fourteenth Amendment of the United States Constitution provides Plaintiffs a constitutionally protected substantive due process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

131.   At all relevant times, Defendants Strampel, Ward and Kauffman were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or MSU.

132.   Defendants Strampel, Ward and Kauffman had a duty to supervise their employees, agents and/or representatives, in the appropriate manner to detect, report and prevent sexual harassment, sexual abuse, and sexual assault and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

133.   At all relevant times, Defendant Ward acted in a supervisory role to Phinn through her role as the MSU Neurology Residency Director and MSU Associate Chair of Neurology and other affiliated MSU departments and institutions.

134.   Upon information and belief, at all relevant times, Defendant Kauffman acted in a supervisory role to Phinn through his role at MSU's College of Osteopathic Medicine, and other affiliated MSU departments or institutions.

135.   Upon information and belief, until he stepped down from his position at University in December 2018, Defendant Strampel acted in a supervisory role to Phinn through his role at MSU's College of Osteopathic Medicine, and other affiliated MSU departments or institutions

136.   Defendants Strampel, Ward and Kauffman failed to train and supervise MSU employees, agents, and/or representatives under their purview regarding, but not limited to, the following duties:

a.   Perceive, report and stop inappropriate sexual conduct on campus;

b.   Provide diligent supervision over other staff, such as Phinn, while in the Department of Neurology;

c.   Report suspected incidence of sexual harassment and sexual assault

d.   Ensure the safety of all students, faculty, staff, community members and visitors of MSU's campuses and premises;

e.   Provide a safe working environment for all faculty and staff on MSU premises free from sexual harassment and sexual assault;

f.   Create and maintain customs, policies, and practices that maintain the safety of employees at MSU's campus to be free from sexual harassment and sexual assault;

g.   Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment

137.   Defendants Strampel, Ward and Kauffman breached their duty by failing to properly supervise Phinn at MSU's Neurology Clinic.

138.   Additionally, Defendants Strampel, Ward and Kauffman did not put proper protocol or safeguards in place to prevent against known dangers that Phinn posed based on his propensity for inappropriate and nonconsensual sexual conduct toward women.

139.   Defendants Strampel, Ward and Kauffman breach of their duty resulted in a violation of Plaintiffs' right to bodily integrity as secured by the Michigan and United States Constitution.

140.    Defendants Strampel, Ward and Kauffman, and potential unknown others associated with MSU are also liable to Plaintiffs under 42 U.S.C. § 1983 for maintaining customs, policies and practices which deprived Plaintiffs of their constitutional rights.

141.    Defendants Strampel, Ward and Kauffman, and potential unknown others associated with MSU tolerated and authorized and/or permitted a custom, policy, practice and/or procedure of insufficient supervision within the Neurology Clinic, which allowed Phinn to perpetrate abuse against Plaintiffs and ultimately resulted in a violation of their constitutional right to bodily integrity under 42 U.S.C. 1983.

142.    As a direct and proximate result of Defendants Strampel, Ward and Kauffman's actions and/or inactions, Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and  psychological injuries.

143.    In the alternative, the action or inaction of Strampel, Ward and Kauffman's was deliberately indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constituted gross negligence that is the proximate cause of Plaintiffs' damages.  Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and psychological injuries.

## VIII.   COUNT SIX – NEGLIGENCE AGAINST DEFENDANT MCCRIMMON

144.    Plaintiff reallege and incorporate by reference the allegations contained above.

145.    The Fourteenth Amendment of the United States Constitution provides Plaintiffs a constitutionally protected substantive due process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

146.    Defendant McCrimmon, as Plaintiffs' supervisor, owed Plaintiffs a duty to report known sexual harassment and assault.

147.    This duty was mandated by MSU's Policy on Relationship Violence and Sexual Misconduct.

148.    At all relevant times, MSU had a policy requiring MSU employees to immediately report sexual harassment and sexual assault at the bare minimum to the Office of institutional Equity.

149.    McCrimmon violated the aforementioned internal policy in or around December 2017, when she was told by Plaintiff Brock about being harassed by Phinn and McCrimmon in turn failing to report the conduct.

150.    McCrimmon's violation of the policy by refusing to take any action in response to legitimate and credible claims of sexual harassment resulted in Plaintiffs' violations of their constitutional rights to bodily integrity, which includes the right to be free from sexual assault.

151.    Ultimately, McCrimmon failed to adequately and properly investigate the complaints of Plaintiff Brock by failing to:

        a. Perform thorough investigation into improper conduct of Phinn after receiving information from Plaintiff Brock that Phinn had shown her photographs of his penis at her desk in the Neurology Clinic;

      b.   Protect Plaintiffs from known sexual harassment and assault; and

      c.   Failing to report the misconduct to OIE for a further investigation.

152.    As a direct and proximate result of McCrimmon's actions and/or inactions, Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and psychological injuries.

153.    In the alternative, the action or inaction of McCrimmon was deliberately indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constituted gross negligence that is the proximate cause of Plaintiffs' damages.  Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and psychological injuries.

154.    MSU is vicariously liable for negligence of its employees such as McCrimmon based on respondeat superior.

## IX.  COUNT SEVEN – NEGLIGENCE AS TO DEFENDANTS STRAMPEL, KAUFFMAN, AND WARD

155.    Plaintiff reallege and incorporate by reference the allegations contained above.

156.    The Fourteenth Amendment of the United States Constitution provides Plaintiff a constitutionally protected substantive due process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

157.    Defendants Strampel, Kauffman and Ward owed Plaintiffs a duty of ordinary care when hiring, retaining and supervising resident doctor employees, such as Phinn, within the Neurology Clinic.

158.    This duty included:

      a.  Ensuring their safety and freedom from sexual harassment, abuse, assault, and molestation while interacting with other MSU employees, representatives, and/or agents within their department and under their supervision, such as Phinn;

      b.  Providing reasonable supervision of MSU employees, agents and/or representatives within their department and under their supervision, such as Phinn, while in the course of employment at MSU's Neurology Clinic;

      c.  Protecting Plaintiff from and/or warning Plaintiff of known sexual harassment, assault, abuse, battery, and molestation by Phinn;

      d.  Credentialing, hiring, retaining, screening, regulating and monitoring MSU Neurology Clinic employees, agents, and/or representatives, such as Phinn.

159.    Strampel, Kauffman and Ward breached their duty Plaintiff by hiring Phinn with a known history of sexual harassment and assault and not putting safeguards or polices in place given the known history of Phinn that would maintain Plaintiff's safety as an M.A. assigned to work with and in the same department as Phinn.

160.    Strampel, Kauffman and Ward breached their duty Plaintiffs by failing to inform Plaintiff
of known acts of sexual harassment, assault, abuse and molestation.

161.    Strampel, Kauffman and Ward breached their duty to Plaintiffs by failing to adequately
supervise Phinn while under their direction within the MSU Neurology clinic.

162.    As a direct and proximate result of Defendant Strampel, Kauffman and Ward actions and/or
inactions, Plaintiffs have suffered injuries including, but not limited to, pain and suffering,
severe emotional distress, potential loss of earnings and earning capacity, loss of reputation
and esteem in the community including embarrassment, loss of self-esteem, disgrace,
fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of
emotional distress and psychological injuries.

163.    In the alternative, the action or inaction of Strampel, Kauffman and Ward was deliberately
indifferent and so reckless as to demonstrate a substantial lack of concern for whether an
injury would result to Plaintiffs and constituted gross negligence that is the proximate cause
of Plaintiffs' damages.  Plaintiffs have suffered injuries including, but not limited to, pain
and suffering, severe emotional distress, potential loss of earnings and earning capacity,
loss of reputation and esteem in the community including embarrassment, loss of self-
esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical
manifestations of emotional distress and psychological injuries.

164.    MSU is vicariously liable for negligence of its employees Strampel, Kauffman and Ward
based on respondeat superior.

## X.    COUNT EIGHT – GROSS NEGLIGENCE AS TO DEFENDANT MSU

165.    Plaintiff reallege and incorporate by reference the allegations contained above.

166.    Plaintiff was an employee of MSU at all relevant times.

167.  MSU owed Plaintiffs a duty to use due care to ensure the safety and freedom from sexual harassment, assault, abuse, and molestation within the workplace while Plaintiffs interacted with other employees and/or agents, including Phinn.

168.  Phinn owed a duty to Plaintiffs to use due care in his capacity as an employee, representative, and/or agent of MSU.

169.  MSU breached its duty when negligently hiring, retaining, and supervising Phinn.

170.  MSU had actual knowledge of complaints in 2013 regarding Phinn's nonconsensual, inappropriate sexual touching and sexual harassment against a fellow medical student.

171.  MSU further had actual knowledge that Phinn was found in violation of its policy in 2013 based on the above-mentioned complaints.

172.  Further, there were no safeguards put in place to monitor Phinn's behavior while in MSU's neurology clinic nor were there protocol or polices in place to prevent Phinn from harassing and assaulting other employees within the clinic.

173.  MSU hired, retained and failed to supervise Phinn knowing about his prior violation of the policy and without implementing any safeguards to protect Plaintiff.

174.  MSU hiring, retaining and failure to supervise Phinn was so reckless as to demonstrate a substantial lack of concern for whether injury would result to Plaintiff.

175.  MSU is vicariously liable to Plaintiffs for the negligence of its employees such as Strampel, Kauffman, Ward, and McCrimmon based on respondeat superior.

176.  As the direct and proximate result of MSU's actions and/or inactions, Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief,

humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and psychological injuries.

177. In the alternative, the action or inaction of MSU was deliberately indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constituted gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and psychological injuries.

## XI.   COUNT NINE – NEGLIGENT SUPERVISION AS TO DEFENDANTS EDWARD W. SPARROW HOSPITAL ASSOCATION, d/b/a SMG LANSING INTERNAL MEDICINE, and EDWARD W. SPARROW HOSPITAL ASSOCIATION

178. Plaintiff reallege and incorporate by reference the allegations contained above.

179. A duty of reasonable care for the safety of Defendants Edward W. Sparrow Hospital Association d/b/a SMG Lansing Internal Medicine and Edward W. Sparrow Hospital Association's patients, patrons, and/or other invitees is imposed upon an employer whose employees are brought into contact with the general public in the course of the company's business.

180. In fulfilling its duty as a supervisor in this case, Defendants Edward W. Sparrow Hospital Association d/b/a SMG Lansing Internal Medicine and Edward W. Sparrow Hospital Association must use due care to avoid the selection and/or retention of an employee, agent, or ostensible agent whom it knows or should know is a person unworthy, by habits,

temperament, or nature to deal with the persons with whom the employees, agents, and/or ostensible agents interact during the normal course of business.

181. An employer's knowledge of past acts of impropriety, violence, or disorder on the part of the employee, agent, or ostensible agent is generally sufficient to forewarn the employer who selects and/ or retains such an employee that said employee may eventually cause harm.

182. Upon information and belief, Defendants Edward W. Sparrow Hospital Association d/b/a SMG Lansing Internal Medicine and Edward W. Sparrow Hospital Association had prior knowledge that Phinn was using his capacity as a physician to commit sexual assault and battery on the nurses he worked with.

183. Defendants Edward W. Sparrow Hospital Association d/b/a SMG Lansing Internal Medicine and Edward W. Sparrow Hospital Association did not put proper protocol or safeguards in place to prevent against known dangers that Phinn posed based on his propensity for inappropriate and nonconsensual sexual conduct toward women.

184. Defendants Edward W. Sparrow Hospital Association d/b/a SMG Lansing Internal Medicine and Edward W. Sparrow Hospital Association's breach of their duty resulted in a violation of Plaintiffs' right to bodily integrity as secured by the Michigan and United States Constitution.

185. As a direct and proximate result of Defendants Edward W. Sparrow Hospital Association d/b/a SMG Lansing Internal Medicine and Edward W. Sparrow Hospital Association's actions and/or inactions, Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-

esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and  psychological injuries.

186.    In the alternative, the action or inaction of Edward W. Sparrow Hospital Association d/b/a SMG Lansing Internal Medicine and Edward W. Sparrow Hospital Association was deliberately indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constituted gross negligence that is the proximate cause of Plaintiffs' damages.  Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and psychological injuries.

## XII.   DAMAGES

187. Plaintiff reallege and incorporate by reference the allegations contained above.

188. As a direct and proximate result of MSU's actions and/or inactions, Plaintiffs have suffered injuries including, but not limited to, pain and suffering, severe emotional distress, potential loss of earnings and earning capacity, loss of reputation and esteem in the community including embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, physical manifestations of emotional distress and psychological injuries.

189. The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiffs' Constitutional and Federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

190. In whole or in part, as a result of some or all of the above actions and/or inactions of Defendant MSU, Plaintiffs have and continue to suffer irreparable harm as a result of the violations.

191. The amount in controversy for each Plaintiff exceeds the jurisdictional minimum of $75,000.00.

**WHEREFORE**, Plaintiff requests this Court and the fact finder to enter a Judgment in Plaintiffs' favor against Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendant all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiffs all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiffs are entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

  a) Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiff's Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

  b) Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

  c) Reasonable attorney fees, interest, and costs; and,

  d) Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the

safety and protection of young athletes and other individuals, as appears to be reasonable and just

Respectfully Submitted,

Dated: May 25, 2021

*Kelly R. McClintock*
Kelly R. McClintock (P83198)
GREWAL LAW, PLLC
2290 Science Parkway
Okemos, MI 48864