UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAYLYN BROCK,
KENDRA DEYARMOND,

    Plaintiffs,                                    Case No. 1:21-cv-436

v.                                                   Hon. Hala Y. Jarbou

MICHIGAN STATE UNIVERSITY, et al.,

    Defendants.
_____/

## OPINION

Plaintiffs Kaylyn Brock and Kendra Deyarmond work for Michigan State University ("MSU") in its Neurology Clinic. They contend that Michael Phinn, an MSU medical school graduate participating in a residency program at the clinic, sexually harassed and abused them from June 2017 to September 2018. Plaintiffs bring this action against MSU and the following individuals associated with MSU: MSU's Board of Trustees; William Strampel, the Dean of MSU's College of Osteopathic Medicine until December 2017; David Kauffman, the Chair of MSU's Department of Neurology; Jayne Ward, the Neurology Residency Director and Associate Chair of Neurology at MSU; and Raquel McCrimmon, the Neurology Clinical Coordinator. Plaintiffs also sue the Edward W. Sparrow Hospital Association d/b/a SMG Lansing Internal Medicine and the Edward W. Sparrow Hospital Association (a corporation).

Before the Court is a motion to dismiss certain claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, filed by Defendants MSU, MSU's Board of Trustees, Kauffman, and Ward (ECF No. 20). For the reasons herein, the Court will grant the motion.

### I. BACKGROUND

According to the complaint, Plaintiffs worked with Phinn as Medical Assistants. Brock worked with Phinn from June 2017 to September 2018. Deyarmond worked with him from June

2018 to September 2018. During those time periods, Phinn repeatedly groped Plaintiffs and touched them in inappropriate ways. He also exposed himself to them and sent them pictures and videos of himself naked and/or masturbating.

In December 2017, Brock allegedly informed McCrimmon, her supervisor, of Phinn's unwelcome and inappropriate physical contact and of pictures he sent her showing his genitalia. Plaintiffs allege that MSU's policies required McCrimmon to report Phinn's conduct to MSU's Office of Institutional Equity, but she did not do so. Phinn continued to harass and assault Brock. And in June 2018, he began to harass and assault Deyarmond in similar ways.

Plaintiffs allege that Defendants were aware that Phinn had a history of sexually abusive behavior because he "was previously found in violation of harassing and assaulting a fellow medical student" at MSU while he was enrolled in medical school. (Compl. ¶ 36, ECF No. 1.) Nevertheless, Defendants hired Phinn and allowed him to work in the Neurology Clinic without adequate supervision.

In September 2018, authorities allegedly arrested Phinn and charged him with multiple counts of criminal sexual conduct ("CSC") and several counts involving unauthorized or illegal use of a computer to commit a crime. On July 30, 2019, he pled guilty to two counts of second degree CSC, one count of unauthorized access to a computer, and one count of using a computer to commit a crime. He received a sentence of 5 to 15 years in prison. His convictions allegedly "relate directly to incidents that took place at MSU's Neurology Department and Sparrow Hospital." (*Id.* ¶ 48.)

Based on the foregoing, Plaintiffs assert multiple claims against Defendants under federal and state law. Count One of the complaint contends that MSU and its Board of Trustees violated Title IX of the Education Act of 1972, 20 U.S.C. § 1681(a) *et seq.* Count Two asserts a

discrimination claim against Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Count Three asserts a similar claim against MSU under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.* Count Four asserts that Strampel and Ward violated Plaintiffs' constitutional rights by negligently hiring Phinn, subjecting them to liability under 42 U.S.C. § 1983. Count Five asserts that Strampel, Ward, and Kauffmann negligently supervised Phinn, giving rise to liability under § 1983. Count Six asserts that McCrimmon was negligent for failing to investigate and report Phinn's conduct. Count Seven asserts that Strampel, Kauffman, and Ward were negligent when hiring, retaining, and supervising Phinn. Count Eight asserts that MSU was grossly negligent when hiring, retaining, and supervising Phinn. Finally, Count Nine asserts that the Edward W. Sparrow Hospital Association was negligent in supervising Phinn.

Defendants MSU, its Board of Trustees, Kauffman, and Ward argue that the Court should dismiss the claims against them in Counts Two, Three, Four, Five, Seven, and Eight.

## II. DISMISSAL STANDARD

A claim may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

3

679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint under Rule 12(b)(6) must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### III. ANALYSIS

#### A. Count Two (Title VII)

Defendants assert that Count Two is untimely. Plaintiffs agree that the Court can dismiss this claim. (Pls.' Response Br. in Opp'n to Mot. to Dismiss 10, ECF No. 26.) Accordingly, the Court will dismiss Count Two.

#### B. MSU: Counts Three & Eight

Defendants argue that the state-law claims against MSU in Counts Three and Eight are barred by sovereign immunity under the Eleventh Amendment and governmental immunity under Michigan's Governmental Tort Liability Act (GTLA), Mich. Comp. Laws § 691.1407(1).

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not

expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

As an arm of the state of Michigan, MSU is entitled to invoke sovereign immunity. *See Estate of Ritter by Ritter v. Univ. of Mich.*, 851 F.2d 846, 848-50 (6th Cir. 1988) (recognizing that Michigan state universities are immune from suit in federal court); *Vargo v. Sauer*, 576 N.W.2d 656, 664 (Mich. 1998) ("It is undisputed that MSU, as an extension of the state, generally is entitled to invoke sovereign immunity.").

If MSU's Board of Trustees were a defendant to Counts Three and Eight, the same conclusion would apply to that defendant as well because it is also an arm of the state and any judgment against it would come out of state funds. *See Hutchins v. Bd. of Trs. of Mich. State Univ.*, 595 F. Supp. 862, 866-68 (W.D. Mich. 1984); *Uraz v. Mich. State Univ. Bd. of Trs.*, No. 1:19-CV-223, 2019 WL 2442314, at *3 (W.D. Mich. June 12, 2019).

Plaintiffs agree that Count Eight is subject to dismissal. But they argue that "governmental immunity" does not apply to the ELCRA claim in Count Three, ostensibly referring to the immunity available under the GTLA. (*See* Pls.' Response Br. 16.) However, the issue is whether MSU is entitled to *sovereign* immunity under the Eleventh Amendment. Plaintiffs rely on cases discussing governmental immunity provided in the GTLA. *See Does 11-18 v. Dep't of Corrs.*, 917 N.W.2d 730, 736 (Mich. Ct. App. 2018); *Manning v. City of Hazel Park*, 509 N.W.2d 874, 881 (Mich. Ct. App. 1993). Those cases are inapposite. None of them holds that the State of Michigan has waived its sovereign immunity to suit in federal court.

Plaintiffs also argue that the sovereign-immunity defense fails because Defendants' conduct amounted to a "violation of the clearly established constitutionally protected rights to

5

bodily integrity, . . . of which reasonable persons . . . would have known." (Pls.' Response Br. 11-12.) Plaintiffs are apparently referring to the standard for *qualified* immunity, which applies to claims against individual officials and is wholly unrelated to sovereign immunity. A violation of clearly established rights does not overcome sovereign immunity. Consequently, a state court is the proper forum for Plaintiffs' claims against MSU, not a federal court.

Accordingly, the Court will dismiss Counts Three and Eight.

### C. Ward & Kauffman: Counts Four & Five (§ 1983)

Defendants argue that Plaintiffs fail to state a claim against Defendants Ward and Kauffman in Counts Four and Five, which assert that these defendants negligently hired and/or supervised Phinn, causing Plaintiffs to be deprived of their constitutional right to bodily integrity.[1]

Defendants note that negligent conduct is not actionable under § 1983. *See Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) ("[S]upervisory liability requires more than negligence or recklessness."); *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ("[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another."); *see also Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[T]he Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property.").

Plaintiffs concede this point, but they argue that "[n]egligence is not the core of Counts 4 and 5 – rather, it is the fact that Defendants Ward and Kauffman's conduct directly and proximately caused Plaintiffs to be subjected to the deprivation of their bodily integrity." (Pls.' Response Br. 12.) Plaintiffs contend that Ward and Kauffman can be liable if they "'at least implicitly

---

[1] The right to bodily integrity stems from the Due Process Clause of the Fourteenth Amendment. *See generally, Guertin v. State*, 912 F.3d 907 (6th Cir. 2019).

6

authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

Plaintiffs compare this case to *Garza*, in which school officials "received and inadequately responded to multiple complaints that [a teacher] was physically abusing students." *Id.* at 866. The Court of Appeals for the Sixth Circuit held that the relevant questions were whether the school officials "acted in a manner demonstrating deliberate indifference to the likelihood of [the teacher's] future abuse and, if so, whether their deliberately indifferent conduct caused [the] violation of [the plaintiff's] rights." *Id.* at 868. One school official had received reports of ten "individual alleged instances of abuse, making them sufficiently consistent and numerous to plausibly allege that [the defendant] possessed information showing [the teacher's] strong likelihood of re-offense." *Id.* at 869. However, that school official took no action to report or investigate these incidents and the teacher continued to abuse his students. The court found that these allegations were sufficient to state a claim against the school official because "it is clearly foreseeable that if a teacher's ongoing physical abuse of students is not responded to, that teacher will continue to physically abuse students." *Id.*

*Garza* is distinguishable. In contrast to that case, Plaintiffs allege only that Defendants were aware that Phinn "was previously found in violation of sexually harassing and assaulting a fellow medical student" when he was in medical school. (Compl. ¶ 36.) Those facts alone do not suggest a strong likelihood that Phinn would engage in similar conduct toward Plaintiffs, let alone that Ward and Kauffman were deliberately indifferent to Plaintiffs' rights by hiring him and failing to adequately supervise him. Plaintiffs do not allege that Ward and Kauffman were aware of a previous pattern of misconduct by Phinn. Nor do they allege that Ward and Kauffman were aware

7

of Phinn's conduct *toward Plaintiffs*. Thus, like the defendants in *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996), Ward and Kauffman were not "confronted with such a widespread pattern of constitutional violations that their actions or inactions amounted to a deliberate indifference to the danger of [Phinn] sexually abusing [co-workers]." *Id.* at 513. At most, Plaintiffs have alleged that Defendants were "sloppy, reckless, or neglectful in the performance of their duties[,]" which "is not enough for section 1983 liability[.]" *Id.*

Accordingly, the Court will dismiss Counts Four and Five against Defendants Ward and Kauffman for failure to state a claim.

### D. Ward & Kauffman: Count Seven (Negligent Hiring & Supervision)

Defendants Ward and Kauffman argue that they are entitled to governmental immunity for Plaintiffs' claim in Count Seven that Defendants were negligent in hiring, retaining, and supervising Phinn. Governmental immunity is an affirmative defense requiring the defendant-employee to establish that

> (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature.

*Odom v. Wayne Cnty.*, 760 N.W.2d 217, 218 (Mich. 2008). "A governmental employee fails the 'good faith' standard under the second prong when they act maliciously, recklessly, capriciously, or willfully and corruptly." *Peterson v. Heymes*, 931 F.3d 546, 557 (6th Cir. 2019) (quoting *Odom*, 760 N.W.2d at 224-25).

Here, there are no facts indicating that Defendants Ward and Kauffman acted outside the scope of their authority or did not act in good faith. Moreover, any actions toward Phinn would have been discretionary, rather than ministerial, in nature.

Plaintiffs respond that there is an exception to immunity for conduct that "amount[s] to gross negligence" and "that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(2)(c). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a).

Here, however, there are no allegations in the complaint suggesting gross negligence by Kauffman or Ward. As the Michigan Court of Appeals has explained:

> Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. However, saying [Defendants] could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent. The much less demanding standard of care—gross negligence—suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge.

*Tarlea v. Crabtree*, 687 N.W.2d 333, 339 (Mich. Ct. App. 2004).

Even assuming that Defendants Ward and Kauffman were aware of Phinn's history toward another student, Plaintiffs have not alleged facts from which to infer that these defendants willfully disregarded "substantial risks" that Phinn would do the same to Plaintiffs. As discussed above, Phinn's prior assault and harassment of one of his student peers does not mean he posed a substantial risk of similar conduct toward his co-workers, let alone that Defendants should have taken extra precautions in hiring and supervising that would have prevented what happened to Plaintiffs.

In addition, Defendants' negligence was not the "proximate cause" of Plaintiffs' injury. *See* Mich. Comp. Laws § 691.1407(2)(c). Proximate cause in the governmental immunity statute means "the *one* most immediate, efficient, and direct cause preceding an injury, not '*a* proximate cause.'" *Robinson v. City of Detroit*, 613 N.W.2d 307, 311 (Mich. 2000) (emphasis added).

9

Phinn's conduct was the proximate cause of Plaintiffs' injuries, not Defendants' alleged negligence. *Cf. Miller ex rel. Miller v. Lord*, 686 N.W.2d 800, 802 (Mich. Ct. App. 2004) (student who physically assaulted another student was the proximate cause of injury stemming from the assault, not the teachers' failure to supervise the students); *Gray v. Cry*, No. 291142, 2011 WL 4375074, at *4 (Mich. Ct. App. Sept. 20, 2011) (same); *Snorton ex rel. Jamison v. Mt. Clemens Sch. Dist.*, Nos. 257615, 25761, 2006 WL 781986, at *2 (Mich. Ct. App. Mar. 28, 2006) (same); *see also Robinson*, 613 N.W.2d at 319 (reckless driver was the proximate cause of injury sustained by the passenger in his vehicle, not the police officers who pursued them). Thus, Plaintiffs' assertions that Defendants were grossly negligent, and that their negligence was the cause of Plaintiffs' injuries, are wholly conclusory. They are not supported by the allegations in their complaint.

Finally, Plaintiffs contend that dismissal on the basis of governmental immunity is not appropriate before the parties have engaged in discovery, citing *Krawczyk v. Township of Hagar*, 673 F. App'x 508 (6th Cir. 2016). In that case, a man drowned in a rip current in Lake Michigan. The widow sued township officials, claiming that they were negligent for failing to warn beachgoers of the dangerous water conditions. *Id.* at 510. The Court of Appeals for the Sixth Circuit concluded that governmental immunity was not appropriate at that point because "it's hard to say at the motion-to-dismiss stage whether it was the rip current, the lack of warning, or the decision not to close the beach that was [the proximate] cause" of death. *Id.* at 513. Thus, some discovery was necessary to resolve the issue of proximate cause. *Id.*

This case is different from *Krawczyk*. Plaintiffs' allegations make clear that Phinn's intentional acts were the proximate cause of their injuries. Additional discovery will not change that fact. In contrast, *Krawczyk* involved a duty to warn about hazardous water conditions, where

the immediate cause of injury was unclear. Also, that court was concerned that ruling for the defendants before discovery "would mean that, when an environmental danger causes an injury, inadequate precautions from government officials are *never* the proximate cause." *Krawczyk*, 673 F. App'x at 513. That concern is not at issue here. This case does not involve injuries allegedly caused by a failure to warn about an environmental danger. Instead, it involves assaultive behavior by a third party, as in *Miller*, *Gray*, and *Snorton*. That behavior was clearly the most immediate and direct cause of Plaintiffs' injuries. Accordingly, Defendants Ward and Kauffman are entitled to immunity for the claim against them in Count Seven.

## IV. CONCLUSION

For the reasons discussed, the Court will grant Defendants' motion. The Court will dismiss Count Two as untimely. The Court will dismiss Counts Three and Eight based on sovereign immunity. In addition, the Court will dismiss Counts Four, Five, and Seven as to Defendants Ward and Kauffman because Counts Four and Five fail to state a claim against these defendants and Defendants are entitled to governmental immunity for Count Seven. Because these claims are the only ones against Defendants Ward and Kauffman, they will be dismissed as defendants.

The following claims remain pending in the case: Count One against MSU and its Board of Trustees; Counts Four, Five, and Seven against Defendant Strampel; Count Six against Defendant McCrimmon; and Count Nine against the Edward W. Sparrow Hospital Association defendants.

An order will enter consistent with this Opinion.

Dated:   January 20, 2022                        /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 UNITED STATES DISTRICT JUDGE